1
2
3
4
5 **UNITED STATES DISTRICT COURT**
6 EASTERN DISTRICT OF CALIFORNIA
7
R. MEDINA,                                    /   1:06-cv-00697-LJO-SMS (PC)
8                                             /
                    Plaintiff,               /
9                                             /   ORDER DISMISSING COMPLAINT
        v.                                    /   WITH LEAVE TO AMEND
10                                            /
L. EMARD, et. al.,                            /   (Doc. 1)
11                                            /
                    Defendants.              /
12 _____/
13

14 **I.    SCREENING ORDER**

15        R. Medina ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis.

16 Plaintiff originally filed his complaint on June 5, 2006.

17        **A.    Screening Requirement**

18        The Court is required to screen complaints brought by prisoners seeking relief against a

19 governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a).  The

20 Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are

21 legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or

22 that seek monetary relief from a defendant who is immune from such relief.  28 U.S.C.

23 § 1915A(b)(1),(2).  "Notwithstanding any filing fee, or any portion thereof, that may have been

24 paid, the court shall dismiss the case at any time if the court determines that . . . the action or

25 appeal . . . fails to state a claim upon which relief may be granted."  28 U.S.C. §

26 1915(e)(2)(B)(ii).

27        A complaint, or portion thereof, should only be dismissed for failure to state a claim upon

28 which relief may be granted if it appears beyond doubt that Plaintiff can prove no set of facts in

1

1   support of the claim or claims that would entitle him to relief.  See Hishon v. King & Spalding,

2   467 U.S. 69, 73 (1984), *citing* Conley v. Gibson, 355 U.S. 41, 45-46 (1957); see also Palmer v.

3   Roosevelt Lake Log Owners Ass'n, 651 F.2d 1289, 1294 (9th Cir. 1981).  In reviewing a

4   complaint under this standard, the court must accept as true the allegations of the complaint in

5   question, Hospital Bldg. Co. v. Rex Hospital Trustees, 425 U.S. 738, 740 (1976), construe the

6   pleading in the light most favorable to the plaintiff, and resolve all doubts in the plaintiff's favor.

7   Jenkins v. McKeithen, 395 U.S. 411, 421 (1969).

8       **B.    Summary of Plaintiff's Complaint**

9       Plaintiff is a state prisoner currently housed at California State Prison, Los Angeles

10  County, in Lancaster, California.  The acts he complains of allegedly occurred while Plaintiff was

11  housed at California Correctional Institution ("CCI") in Tehachapi, California.

12      Plaintiff names as defendants: C/O's Erica Barajas, Daniela Bray, Lary Emard, Joen

13  Razo, Alberta Morales, and Jerome Nunley; Sgt. Daniela Frazer; M.T.A. Roseann Beagle; Lt.'s

14  Hartgrove, B. Taylor, and R. Miller; Capt's F.B. Haws and R. Grounds; and Dr. Vo.

15      Plaintiff alleges that he has extremely long hair which he refused to cut upon transfer to

16  CCI.  On August 16, 2005, at CCI, after picking up his dinner tray, while on his way back to his

17  cell, he picked up a bar of soap that another inmate tossed out to him;  upon doing so, C/O

18  Emard directed him to put down his dinner tray, and Plaintiff did not comply.  C/O's Emard and

19  Barajas approached Plaintiff, and C/O Emard grabbed Plaintiff's ponytail, slammed him into the

20  wall and placed handcuffs on him.   Plaintiff was moved downstairs and into a holding cell where

21  he remained handcuffed.   When Plaintiff yelled to Sgt. Frazer, C/O Emard walked over and

22  sprayed mace into Plaintiff's face and ear.   C/O Bray placed shackles on Plaintiff's ankles and

23  two C/O's escorted Plaintiff from the holding cell.   Due to the pace at which they were walking,

24  Plaintiff tripped, and the C/O's let go of his arms such that he fell face down, hitting his knees.

25  C/O Bray then yelled that Plaintiff was resisting, at which time pepper spray was sprayed in

26  Plaintiff's right eye and ear.   As Plaintiff lay on the floor handcuffed, shackled, and

27  coughing/gasping for breath, C/O's Bray, Nunley, Emard, Razo, Morales, and Barajas kicked his

28  crotch and legs.   C/O Razo drug Plaintiff by the shackles while the other C/Os continued to kick

him.   Two C/Os then picked Plaintiff up by the handcuffs and shackles and carried him to be

hosed off and placed in a holding cage where he was told to take off his clothes.   He was given

clean boxers to wear and after remaining in the holding cage for 2 ½ hours, C/O's Razo and

Morales read Plaintiff his Miranda rights and advised that he was being charged with battery on

C/O Nunley.   Plaintiff requested medical attention, and C/O Razo advised he would have to wait

until he was transferred to Ad-Seg.   A while later, two C/O's cuffed Plaintiff and escorted him

into a room where only his upper body was photographed by C/O's Mathus and Madden (not

named defendants).   Plaintiff was advised his lower body would be photographed after he was

seen by a doctor.   He was then placed in an isolation holding room instead of Ad-Seg so as to

hide Plaintiff's bloodied wounds from the view of other inmates.   Plaintiff was placed on suicide

watch without a blanket, mattress, running water, or clean boxers.   The morning after the

incident, Plaintiff again requested and was denied medical attention.   Plaintiff was able to gain

the attention of a nurse who advised that she could not assist him because he hit an officer, and

his medical file could not be located for her to give Plaintiff his inhaler.   On August 18, 2005,

Plaintiff was transferred to Ad-Seg where C/O B. Taylor and all defendants conspired to cover-

up/justify Plaintiff's injuries.   Capt. F. B. Haws submitted a false complaint to the district

attorney charging Plaintiff with battery on a peace officer.   On August 16, 2005, MTA Beagle

generated a false medical report and denied Plaintiff medical care.   On August 18, 2005,

Plaintiff was seen by Dr. Vo who was advised that Plaintiff had assaulted a staff member and

thereafter indicated that he did not want to get involved,  only treating Plaintiff's infected eye. On

September 22, 2005, Plaintiff wrote Warden W.J. Sullivan (not a named defendant) a letter

"informing him of the reprisals" he was suffering.   C/O M. Rogers (not a named defendant) was

assigned as the investigating officer and advised that he was working in the gym on the day of the

incident and that the defendants really messed Plaintiff up.   On September 19, 2005, C/O Emard

came to Plaintiff's cell, warned Plaintiff about his 602 appeals, said he could be transferred to

any housing block, and sprayed Plaintiff for no reason.   On September 25, 2005 and February

25, 2006, Lt.'s Miller and Hartgrove, respectively, denied Plaintiff due process regarding the rule

violation (battery on an officer).   Since the incident, Plaintiff has "not received proper medical

treatment" and his appeals have not been acknowledged.   Plaintiff was referred to an eye specialist via a waiting list and was told it would take four to six months to be seen; thereafter, Plaintiff has developed migraine headaches and partially lost both vision in his right eye and hearing in his right ear.

The Plaintiff seeks declaratory and injunctive relief and monetary damages.

Plaintiff has organized his first amended complaint in a manner which is difficult for the Court to ascertain which facts Plaintiff believes show violation(s) of his constitutional rights,  i.e. he makes a chronological statement of facts followed by "legal claims" without stating which facts he feels support each legal claim against any given defendant(s).   It is Plaintiff's duty to specify his claims for relief and their factual basis against each named defendant.   The Court provides Plaintiff with the legal standards which may generally apply to Plaintiff's listed claims.

**C.    Pleading Requirements**

**1.  *Federal Rule of Civil Procedure 8(a)***

"Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions," none of which applies to section 1983 actions.  Swierkiewicz v. Sorema N. A., 534 U.S. 506, 512 (2002); Fed. R. Civ. Pro. 8(a).  Pursuant to Rule 8(a), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. Pro. 8(a).  "Such a statement must simply give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Swierkiewicz, 534 U.S. at 512.  A court may dismiss a complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.  Id. at 514.  "'The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.  Indeed it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test.'" Jackson v. Carey, 353 F.3d 750, 755 (9th Cir. 2003) (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)); see also Austin v. Terhune, 367 F.3d 1167, 1171 (9th Cir. 2004) ("'Pleadings need suffice only to put the opposing party on notice of the claim . . . .'" (quoting Fontana v. Haskin, 262 F.3d 871, 977 (9th Cir. 2001))).  However, "the liberal pleading standard . . . applies only to a plaintiff's factual allegations." Neitze v. Williams, 490

4

1    U.S. 319, 330 n.9 (1989).  "[A] liberal interpretation of a civil rights complaint may not supply

2    essential elements of the claim that were not initially pled."  Bruns v. Nat'l Credit Union Admin.,

3    122 F.3d 1251, 1257 (9th Cir. 1997) (quoting Ivey v. Bd. of Regents, 673 F.2d 266, 268 (9th Cir.

4    1982)).

5                    **2.  *Federal Rule of Civil Procedure 18(a)***

6             "The controlling principle appears in Fed.R.Civ.P. 18(a) 'A party asserting a claim to

7    relief as an original claim, counterclaim, cross-claim, or third-party claim, may join, either as

8    independent or as alternate claims, as many claims, legal, equitable, or maritime, as the party has

9    against an opposing party.'  Thus multiple claims against a single party are fine, but Claim A

10   against Defendant 1 should not be joined with unrelated Claim B against Defendant 2.  Unrelated

11   claims against different defendants belong in different suits, not only to prevent the sort of

12   morass [a multiple claim, multiple defendant] suit produce[s], but also to ensure that prisoners

13   pay the required filing fees-for the Prison Litigation Reform Act limits to 3 the number of

14   frivolous suits or appeals that any prisoner may file without prepayment of the required fees.  28

15   U.S.C. § 1915(g)."  George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007).

16           Plaintiff is advised that if he chooses to file an amended complaint, and fails to comply

17   with Rule 18(a), the Court will count all frivolous/noncognizable unrelated claims that are

18   dismissed therein as strikes such that he may be barred from filing in forma pauperis in the

19   future.

20                    **3.  *Linkage Requirement***

21           The Civil Rights Act under which this action was filed provides:

22                    Every person who, under color of [state law] . . . subjects, or causes
                      to be subjected, any citizen of the United States . . . to the
23                    deprivation of any rights, privileges, or immunities secured by the
                      Constitution . . . shall be liable to the party injured in an action at
24                    law, suit in equity, or other proper proceeding for redress.

25   42 U.S.C. § 1983.  The statute plainly requires that there be an actual connection or link between

26   the actions of the defendants and the deprivation alleged to have been suffered by Plaintiff.  See

27   Monell v.  Department of Social Services, 436 U.S. 658 (1978); Rizzo v. Goode, 423 U.S. 362

28   (1976).  The Ninth Circuit has held that "[a] person 'subjects' another to the deprivation of a

1  constitutional right, within the meaning of section 1983, if he does an affirmative act, participates

2  in another's affirmative acts or omits to perform an act which he is legally required to do that

3  causes the deprivation of which complaint is made." Johnson v. Duffy, 588 F.2d 740, 743 (9th

4  Cir. 1978).

5        In order to state a claim for relief under section 1983, Plaintiff must link each named

6  defendant with some affirmative act or omission that demonstrates a violation of Plaintiff's

7  federal rights.  Plaintiff fails to make any factual allegations against Capt. R. Grounds.  Thus,

8  Capt. R. Grounds is properly dismissed at this time.  Further, in his factual allegations, Plaintiff

9  identifies C/O's M. Rogers, Mathus, Madden, and Warden W.J. Sullivan,  none of whom were

10 named as defendants.  Plaintiff is advised that if he intends to pursue any claims against these

11 three C/O's and Warden Sullivan, he must name them as defendants.  Plaintiff must link each

12 delineated defendant to an alleged unconstitutional claim and its supporting factual allegation(s).

13        **D.    Claims for Relief**

14             **1.** *Cruel and Unusual Punishment – Excessive Force*

15        Plaintiff claims that he was attacked by prison officers who did not like him because he

16 refused to cut his extremely long hair.

17        The Eighth Amendment prohibits those who operate our prisons from using "excessive

18 physical force against inmates." Farmer v. Brennan, 511 U.S. 825 (1994); Hoptowit v. Ray, 682

19 F.2d 1237, 1246, 1250 (9th Cir.1982) (prison officials have "a duty to take reasonable steps to

20 protect inmates from physical abuse"); see also Vaughan v. Ricketts, 859 F.2d 736, 741 (9th

21 Cir.1988), cert. denied, 490 U.S. 1012 (1989) ("prison administrators' indifference to brutal

22 behavior by guards toward inmates [is] sufficient to state an Eighth Amendment claim").  As

23 courts have succinctly observed, "[p]ersons are sent to prison as punishment, not *for*

24 punishment."  Gordon v. Faber, 800 F.Supp. 797, 800 (N.D.Iowa 1992) (citation omitted), *aff'd,*

25 973 F.2d 686 (8th Cir.1992).  "Being violently assaulted in prison is simply not 'part of the

26 penalty that criminal offenders pay for their offenses against society.'"  Farmer, 511 U.S. at 834,

27 114 S.Ct. at 1977 (quoting Rhodes, 452 U.S. at 347).

28        Although the Eighth Amendment protects against cruel and unusual punishment, this

6

1   does not mean that federal courts can or should interfere whenever prisoners are inconvenienced

2   or suffer de minimis injuries.  Hudson v. McMillian, 503 U.S. 1, 6-7 (1992) (8th Amendment

3   excludes from constitutional recognition de minimis uses of force).  The malicious and sadistic

4   use of force to cause harm always violates contemporary standards of decency, regardless of

5   whether significant injury is evident.  Id. at 9; see also Oliver v. Keller, 289 F.3d 623, 628 (9th

6   Cir.2002) (Eighth Amendment excessive force standard examines *de minimis* uses of force, not

7   *de minimis* injuries)).  However, not "every malevolent touch by a prison guard gives rise to a

8   federal cause of action."  Id. at 9.  "The Eighth Amendment's prohibition of cruel and unusual

9   punishments necessarily excludes from constitutional recognition *de minimis* uses of physical

10  force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'"

11  Id. at 9-10 (internal quotations marks and citations omitted).

12          Plaintiff alleges that on August 16, 2005, at CCI, after picking up his dinner tray, while

13  on his way back to his cell, he picked up a bar of soap that another inmate tossed out to him; that

14  upon doing so, C/O Emard directed him, using epitaphs, to put down his dinner tray; Plaintiff did

15  not comply; C/O's Emard and Barajas approached Plaintiff; C/O Emard grabbed Plaintiff's

16  ponytail, slammed him into the wall where handcuffs were placed; Plaintiff was moved

17  downstairs and into a holding cell (where he remained handcuffed); when Plaintiff yelled to Sgt.

18  Frazer, C/O Emard walked over and sprayed mace into Plaintiff's face and ear; C/O Bray placed

19  shackles on Plaintiff's ankles; two C/O's escorted Plaintiff from the holding cell; Plaintiff tripped

20  and the C/O's let go of his arms such that he fell face down, hitting his knees; C/O Bray then

21  yelled that Plaintiff was resisting, at which time pepper spray was sprayed in Plaintiff's right eye

22  and ear; as Plaintiff lay on the floor handcuffed, shackled, and gasping and coughing for breath,

23  C/O's Bray, Nunley, Emard, Razo, Morales, and Barajas kicked his crotch and legs; C/O Razo

24  drug Plaintiff by the shackles while the other C/O's continued to kick him; two C/O's then

25  picked Plaintiff up by the handcuffs and shackles and carried him to be hosed off, placed in a

26  holding cage, told to take off his clothes, and given clean boxers to wear; Plaintiff alleges (in his

27  "Legal Claims") that Sgt. Frazer stood by and watched the attack.

28          Plaintiff states cognizable claims for cruel and unusual punishment/excessive force

1   against C/O's Emard, Barajas, Bray, Nunley, Razo, and Morales.

2        Plaintiff also states a cognizable claim against Sgt. Frazer as "[a] guard who stands and

3   watches while another guard beats a prisoner violates the Constitution." George v. Smith, 507

4   F.3d 605, 609-10 (7th Cir. 2007) citing Greeno v. Daley, 414 F.3d 645, 656-57 (7th Cir.2005);

5   Reed v. McBride, 178 F.3d 849, 851-52 (7th Cir.1999); Vance v. Peters, 97 F.3d 987, 992-93

6   (7th Cir.1996).

7              **2.  *Equal Protection***

8        In his legal claims, Plaintiff alleges that Sgt. Frazer's watching the "malicious attack"

9   "violated Plaintiff's equal protection clauses" of the Eighth and Fourteenth Amendments.

10        However, the Equal Protection Clause requires that persons who are similarly situated be

11   treated alike. City of Cleburne v. Cleburne Living Center, Inc., 473 U.S. 432, 439 (1985).  An

12   equal protection claim may be established in two ways.  First, a plaintiff establishes an equal

13   protection claim by showing that the defendant has intentionally discriminated on the basis of the

14   plaintiff's membership in a protected class. See, e.g., Lee v. City of Los Angeles, 250 F.3d 668,

15   686 (9th Cir.2001).  Under this theory of equal protection, the plaintiff must show that the

16   defendants' actions were a result of the plaintiff's membership in a suspect class, such as race.

17   Thornton v. City of St. Helens, 425 F.3d 1158, 1167 (9th Cir. 2005).

18        If the action in question does not involve a suspect classification, a plaintiff may establish

19   an equal protection claim by showing that similarly situated individuals were intentionally treated

20   differently without a rational relationship to a legitimate state purpose.  Village of Willowbrook

21   v. Olech, 528 U.S. 562, 564 (2000); San Antonio School District v. Rodriguez, 411 U.S. 1

22   (1972); Squaw Valley Development Co. v. Goldberg, 375 F.3d 936, 944 (9th Cir.2004);

23   SeaRiver Mar. Fin. Holdings, Inc. v. Mineta, 309 F.3d 662, 679 (9th Cir. 2002). To state an equal

24   protection claim under this theory, a plaintiff must allege that:  (1) the plaintiff is a member of an

25   identifiable class; (2) the plaintiff was intentionally treated differently from others similarly

26   situated; and (3) there is no rational basis for the difference in treatment. Village of

27   Willowbrook, 528 U.S. at 564.   If an equal protection claim is based upon the defendant's

28   selective enforcement of a valid law or rule, a plaintiff must show that the selective enforcement

1 is based upon an "impermissible motive." Squaw Valley,  375 F.3d at 944; Freeman v. City of

2 Santa Ana, 68 F.3d 1180, 1187 (9th Cir.1995).

3       Plaintiff fails to show that he is a member of a suspect class and that Sgt. Frazer

4 intentionally discriminated against him as a result.  Plaintiff also fails to show that he was a

5 member of an identifiable class and was intentionally treated differently from others so situated

6 without a rational basis.  Thus, Plaintiff fails to state a cognizable claim against Sgt. Frazer for

7 violation of his rights under the Equal Protection Clause.  However, as stated above, Plaintiff

8 may proceed against Sgt. Frazer for observing and failing to stop Plaintiff being attacked by the

9 C/O's.

10             **3.  *Deliberate Indifference to Serious Medical Needs***

11       Plaintiff alleges that Dr. Vo and M.T.A. R. Beagle were deliberately indifferent to his

12 serious medical needs.

13       Where a prisoner's Eighth Amendment claim is one of inadequate medical care, the

14 prisoner must allege and prove "acts or omissions sufficiently harmful to evidence deliberate

15 indifference to serious medical needs." Estelle v. Gamble, 429 U.S. at 106.  Such a claim has

16 two elements:  "the seriousness of the prisoner's medical need and the nature of the defendant's

17 response to that need." McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir.1991).  A medical

18 need is serious "if the failure to treat the prisoner's condition could result in further significant

19 injury or the 'unnecessary and wanton infliction of pain.'" McGuckin, 974 F.2d at 1059 (*quoting*

20 Estelle, 429 U.S. at 104).  Indications of a serious medical need include "the presence of a

21 medical condition that significantly affects an individual's daily activities." Id. at 1059-60.  By

22 establishing the existence of a serious medical need, a prisoner satisfies the objective requirement

23 for proving an Eighth Amendment violation.  Farmer v. Brennan, 511 U.S. 825, 834, 114 S.Ct.

24 1970 (1994).

25       If a prisoner establishes the existence of a serious medical need, he or she must then show

26 that prison officials responded to the serious medical need with deliberate indifference.  Farmer,

27 511 U.S. at 834.  In general, deliberate indifference may be shown when prison officials deny,

28 delay, or intentionally interfere with medical treatment, or it may be shown by the way in which

1   prison officials provide medical care. Hutchinson v. United States, 838 F.2d 390, 393-94 (9th

2   Cir.1988).  Before it can be said that a prisoner's civil rights have been abridged with regard to

3   medical care, however, "the indifference to his medical needs must be substantial.  Mere

4   'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action."

5   Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir.1980) (citing Estelle, 429 U.S. at

6   105-06). See also Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir.2004).  Deliberate

7   indifference is "a state of mind more blameworthy than negligence" and "requires 'more than

8   ordinary lack of due care for the prisoner's interests or safety.'"  Farmer, 511 U.S. at 835

9   (quoting Whitley, 475 U.S. at 319).  "Deliberate indifference is a high legal standard." Toguchi

10  v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004).  "Under this standard, the prison official must

11  not only 'be aware of the facts from which the inference could be drawn that a substantial risk of

12  serious harm exists,' but that person 'must also draw the inference.'"  Id. at 1057 (quoting

13  Farmer, 511 U.S. at 837).  "'If a prison official should have been aware of the risk, but was not,

14  then the official has not violated the Eighth Amendment, no matter how severe the risk.'"  Id.

15  (quoting Gibson v. County of Washoe, Nevada, 290 F.3d 1175, 1188 (9th Cir. 2002)).

16          Delays in providing medical care may manifest deliberate indifference. Estelle, 429 U.S.

17  at 104-05.  Deliberate indifference can be manifested by prison guards intentionally denying or

18  delaying access to medical care or intentionally interfering with the treatment once prescribed.

19  Estelle v. Gamble, 429 U.S. at 104-05.  To establish a claim of deliberate indifference arising

20  from delay, a plaintiff must show that the delay was harmful. See Berry v. Bunnell, 39 F.3d 1056,

21  1057 (9th Cir.1994) (per curiam); McGuckin, 974 F.2d at 1059; Wood v. Housewright, 900 F.2d

22  1332, 1335 (9th Cir.1990); Hunt v. Dental Dep't, 865 F.2d 198, 200 (9th Cir.1989); Shapley v.

23  Nevada Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir.1985) (per curiam).  Mere

24  differences of opinion between a prisoner and prison medical staff as to proper medical care do

25  not give rise to a § 1983 claim. See Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir.1996);

26  Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir.1989); Franklin v. Oregon, 662 F.2d 1337, 1334 (9th

27  Cir.1981).

28          Plaintiff alleges that after remaining in the holding cage for 2 ½ hours and being read his

10

1   rights, he requested but did not receive medical attention.   C/O Razo advised he would have to

2   wait until he was transferred to Ad-Seg.   The morning after the incident, Plaintiff again

3   requested and was denied medical attention.   Plaintiff was eventually able to gain the attention of

4   a nurse who advised that she could not assist him because he hit an officer and his medical file

5   could not be located for her to give Plaintiff his inhaler.   While this may have been deliberate

6   indifference on the part of the prison staff to Plaintiff's serious medical needs, Plaintiff fails to

7   state what if any medical problems he would not have now if he had received immediate medical

8   attention.   Thus, Plaintiff fails to allege cognizable claims for deliberate indifference to his

9   serious medical needs against C/O Razo and/or any other staff who denied him medical attention

10   while he was in the holding cage.

11       Plaintiff also alleges that on August 16, 2005, MTA Beagle generated a false medical

12   report and denied Plaintiff medical care.   The Eighth Amendment is implicated when

13   " 'inadequate, inaccurate and unprofessionally maintained medical records' give rise to 'the

14   possibility for disaster stemming from a failure to properly chart' the medical care received by

15   inmates.   Dawson v. Kendrick, 527 F.Supp. 1252, 1306-07 (S.D.W.Va.1981) (quoting Burks v.

16   Teasdale, 492 F.Supp.650, 676 (W.D. Mo. 1980).   In Burks, 492 F.Supp. at 676, the court

17   recognized "the critical importance of adequate and accurate medical records in any attempt to

18   provide a continuity of medical care."   It held that "inadequate, inaccurate and unprofessionally

19   maintained medical records" constituted a "grave risk of unnecessary pain and suffering" in

20   violation of the Eighth Amendment. Id. at 676, 678.   Thus, Plaintiff states a cognizable claim

21   against MTA Beagle.

22       Plaintiff also alleges that on August 18, 2005, he was seen by Dr. Vo who was advised

23   Plaintiff had assaulted a staff member so thereafter only treated Plaintiff's infected eye,

24   indicating that he did not want to get involved.   He was eventually referred to an eye specialist

25   via a waiting list and was told it would take four to six months to be seen.   Since then Plaintiff

26   has developed migraines and partially lost both vision in his right eye and hearing in his right ear.

27   While this may have been deliberate indifference on the part of the prison staff to Plaintiff's

28   serious medical needs, Plaintiff fails to state whether he would have developed migraine

11

1   headaches and partially lost both vision in his right eye and hearing in his right ear solely from

2   the initial attack and spraying(s), or if all of those injuries developed as a result of any delay(s) in

3   his medical treatment.  Thus, Plaintiff fails to state a cognizable claim against Dr. Vo, or any

4   other prison staff as a result of the delay in referral to an eye specialist.

5                                   **4.  *Procedural Due Process***

6          Plaintiff alleges that Capt. F. B. Haws submitted a false complaint to the district attorney

7   charging Plaintiff with battery on a peace officer, and that on September 25, 2005 and February

8   25, 2006, Lt.'s Miller and Hartgrove, respectively, denied Plaintiff due process regarding the rule

9   violation (battery on an officer) and based their guilty verdict on "trumped up statements" and

10  "failed to stop the conspiracy."  Doc. 1, pg. 20.

11         The Due Process Clause protects prisoners from being deprived of liberty without due

12  process of law.  Wolff v. McDonnell, 418 U.S. 539, 556 (1974).  In order to state a cause of

13  action for deprivation of due process, a plaintiff must first establish the existence of a liberty

14  interest for which the protection is sought.  "States may under certain circumstances create liberty

15  interests which are protected by the Due Process Clause."  Sandin v. Conner, 515 U.S. 472, 483-

16  84 (1995).  Liberty interests created by state law are generally limited to freedom from restraint

17  which "imposes atypical and significant hardship on the inmate in relation to the ordinary

18  incidents of prison life."  Sandin, 515 U.S. at 484.

19         "Prison disciplinary proceedings are not part of a criminal prosecution, and the full

20  panoply of rights due a defendant in such proceedings does not apply."  Wolff v. McDonnell, 418

21  U.S. 539, 556 (1974).  With respect to prison disciplinary proceedings, the minimum procedural

22  requirements that must be met are:  (1) written notice of the charges; (2) at least 24 hours

23  between the time the prisoner receives written notice and the time of the hearing, so that the

24  prisoner may prepare his defense; (3) a written statement by the fact finders of the evidence they

25  rely on and reasons for taking disciplinary action; (4) the right of the prisoner to call witnesses

26  and present documentary evidence in his defense, when permitting him to do so would not be

27  unduly hazardous to institutional safety or correctional goals; and (5) legal assistance to the

28  prisoner where the prisoner is illiterate or the issues presented are legally complex.  Id. at 563-71.

1  As long as the five minimum <u>Wolff</u> requirements are met, due process has been satisfied.

2  <u>Walker v. Sumner</u>, 14 F.3d 1415, 1420 (9th Cir. 1994).

3       "When prison officials limit a prisoner's right to defend himself they must have a

4  legitimate penological interest." <u>Koenig v. Vannelli</u>, 971 F.2d 422, 423 (9th Cir. 1992) (per

5  curiam) (concluding that prisoners do not have a right to have an independent drug test

6  performed at their own expense).  The right to call witnesses may legitimately be limited by "the

7  penological need to provide swift discipline in individual cases . . . [or] by the very real dangers

8  in prison life which may result from violence or intimidation directed at either other inmates or

9  staff." <u>Ponte v. Real</u>, 471 U.S. 491, 495 (1985); <u>see also</u> <u>Mitchell v. Dupnik</u>, 75 F.3d 517, 525

10 (9th Cir. 1996); <u>Koenig</u>, 971 F.2d at 423; <u>Zimmerlee v. Keeney</u>, 831 F.2d 183, 187-88 (9th Cir.

11 1987)(per curiam).

12      "[T]he requirements of due process are satisfied if some evidence supports the decision

13 by the prison disciplinary board . . . ." <u>Hill</u>, 472 U.S. at 455; <u>see also</u> <u>Touissaint v. McCarthy</u>,

14 926 F.2d 800, 802-03 (9th Cir. 1991); <u>Bostic v. Carlson</u>, 884 F.2d 1267, 1269-70 (9th Cir. 1989);

15 <u>Jancsek, III v. Oregon bd. Of Parole</u>, 833 F.2d 1389, 1390 (9th Cir. 1987); <u>Cato v. Rushen</u>, 824

16 F.2d 703, 705 (9th Cir. 1987); <u>see especially</u> <u>Burnsworth v. Gunderson,</u> 179 F.3d 771, 774-74 (9th

17 Cir. 1999) (where there is no evidence of guilt may be unnecessary to demonstrate existence of

18 liberty interest.)  "Some evidence" must support the decision of the hearing officer.

19 <u>Superintendent v. Hill</u>, 472 U.S. 445, 455 (1985).  The standard is not particularly stringent and

20 the relevant inquiry is whether "there is *any* evidence in the record that could support the

21 conclusion reached . . . ." <u>Id</u>. at 455-56 (emphasis added).  However, the "some evidence"

22 standard does not apply to original rules violation report where a prisoner alleges the report is

23 false. <u>Hines v. Gomez</u>, 108 F.3d 265, 268 (9th Cir. 1997).

24      Plaintiff fails both to establish the existence of any protected liberty interest that was

25 infringed upon and to state any facts to address any of the requirements set forth in <u>Wolff</u>.  Thus,

26 Plaintiff fails to state a cognizable claim against either Lt. Miller or Lt. Hartgrove for violation of

27 his rights to procedural due process.

28      Plaintiff alleges that Capt. Haws fraudulently filed charges against him with the district

1   attorney.  Per <u>Hines</u>, Plaintiff may be able to state a cognizable claim against Capt. Haws for

2   violation of his procedural due process rights.  However, Plaintiff fails to allege what, if any,

3   action the District Attorney has taken against him as a result of Capt. Haws' fraudulent charges.

4   Until Plaintiff demonstrates action taken against him which would amount to a deprivation of a

5   protected liberty interest as a result of Capt. Haws' fraudulent charges Plaintiff's claim against

6   Capt. Haws for violation of his rights to procedural due process is also not cognizable.

7                                          **a.  *Prisoner Grievances***

8            Plaintiff alleges that since the incident set forth above, his appeals have not been

9   acknowledged.

10           The Due Process Clause protects prisoners from being deprived of liberty without due

11   process of law.  <u>Wolff v. McDonnell</u>, 418 U.S. 539, 556 (1974).  In order to state a cause of

12   action for deprivation of due process, a plaintiff must first establish the existence of a liberty

13   interest for which the protection is sought.  "States may under certain circumstances create liberty

14   interests which are protected by the Due Process Clause."  <u>Sandin v. Conner</u>, 515 U.S. 472, 483-

15   84 (1995).  Liberty interests created by state law are generally limited to freedom from restraint

16   which "imposes atypical and significant hardship on the inmate in relation to the ordinary

17   incidents of prison life."  <u>Sandin</u>, 515 U.S. at 484.

18           "[A prison] grievance procedure is a procedural right only, it does not confer any

19   substantive right upon the inmates."  <u>Buckley v. Barlow</u>, 997 F.2d 494, 495 (8th Cir. 1993)

20   (citing <u>Azeez v. DeRobertis</u>, 568 F. Supp. 8, 10 (N.D. Ill. 1982)); <u>see also</u> <u>Ramirez v. Galaza</u>,

21   334 F.3d 850, 860 (9th Cir. 2003) (no liberty interest in processing of appeals because no

22   entitlement to a specific grievance procedure); <u>Massey v. Helman</u>, 259 F.3d 641, 647 (7th Cir.

23   2001) (existence of grievance procedure confers no liberty interest on prisoner); <u>Mann v. Adams</u>,

24   855 F.2d 639, 640 (9th Cir. 1988).  "Hence, it does not give rise to a protected liberty interest

25   requiring the procedural protections envisioned by the Fourteenth Amendment."  <u>Azeez v.</u>

26   <u>DeRobertis</u>, 568 F. Supp. at 10; <u>Spencer v. Moore</u>, 638 F. Supp. 315, 316 (E.D. Mo. 1986).

27           Actions in reviewing prisoner's administrative appeals cannot serve as the basis for

28   liability under a § 1983 action.  <u>Buckley</u>, 997 F.2d at 495.  The argument that anyone who knows

about a violation of the Constitution and fails to cure it has violated the Constitution himself is not correct. "Only persons who cause or participate in the violations are responsible. Ruling against a prisoner on an administrative complaint does not cause or contribute to the violation. A guard who stands and watches while another guard beats a prisoner violates the Constitution; a guard who rejects an administrative complaint about a completed act of misconduct does not." George v. Smith, 507 F.3d 605, 609-10 (7th Cir. 2007) citing Greeno v. Daley, 414 F.3d 645, 656-57 (7th Cir.2005); Reed v. McBride, 178 F.3d 849, 851-52 (7th Cir.1999); Vance v. Peters, 97 F.3d 987, 992-93 (7th Cir.1996).

Thus, since he has neither a liberty interest nor a substantive right in inmate appeals, Plaintiff fails and is unable to state a cognizable claim for the processing and/or reviewing of his 602 inmate appeals.

### 5. *Conspiracy*

Plaintiff alleges that on August 18, 2005, he was transferred to Ad-Seg where "C/O B. Taylor and all defendants" conspired to cover-up/justify Plaintiff's injuries.

A conspiracy claim brought under section 1983 requires proof of "'an agreement or meeting of the minds to violate constitutional rights,'" Franklin v. Fox, 312 F.3d 423, 441 (9th Cir. 2002) (quoting United Steel Workers of Am. v. Phelps Dodge Corp., 865 F.2d 1539, 1540-41 (9th Cir. 1989) (citation omitted)), and an actual deprivation of constitutional rights, Hart v. Parks, 450 F.3d 1059, 1071 (9th Cir. 2006) (quoting Woodrum v. Woodward County, Oklahoma, 866 F.2d 1121, 1126 (9th Cir. 1989)). "'To be liable, each participant in the conspiracy need not know the exact details of the plan, but each participant must at least share the common objective of the conspiracy.'" Franklin, 312 F.3d at 441 (quoting United Steel Workers, 865 F.2d at 1541).

The federal system is one of notice pleading, and the court may not apply a heightened pleading standard to plaintiff's allegations of conspiracy. Empress LLC v. City and County of San Francisco, 419 F.3d 1052, 1056 (9th Cir. 2005); Galbraith v. County of Santa Clara, 307 F.3d 1119, 1126 (2002). However, although accepted as true, the "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level . . . ." Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1965 (2007) (citations omitted). A plaintiff must set forth "the

1  grounds of his entitlement to relief[,]" which "requires more than labels and conclusions, and a

2  formulaic recitation of the elements of a cause of action . . . ." Id. at 1964-65 (internal quotations

3  and citations omitted).  As such, a bare allegation that defendants conspired to violate plaintiff's

4  constitutional rights will not suffice to give rise to a conspiracy claim under section 1983.

5       Plaintiff's allegations that C/O B. Taylor and all defendants conspired to cover up injuries

6  inflicted on Plaintiff, without more detail, are not sufficient to state a cognizable conspiracy

7  claim under § 1983.

8                 **6.  *Transfers***

9       Plaintiff alleges that Warden Sullivan (not a named defendant) knew of his "reprisals"

10  and could transfer him to another facility but has failed to do so.  However, Plaintiff is advised

11  that prison inmates do not have a constitutional right to be incarcerated at a particular

12  correctional facility or to be transferred from one facility to another.  Meachum v. Fano, 427 U.S.

13  215, 224-25 (1976).  Thus, Plaintiff fails to state a cognizable claim against Warden Sullivan for

14  failing to transfer Plaintiff to another facility.

15                 **7.  *Retaliation***

16       While not stated as a separate and distinct "Legal Claim," Plaintiff alleges that on

17  September 19, 2005, C/O Emard came to Plaintiff's cell, warned him about his 602 appeals, said

18  he could be transferred to any housing block to get Plaintiff, and sprayed Plaintiff for no reason.

19       Allegations of retaliation against a prisoner's First Amendment rights to speech or to

20  petition the government may support a section 1983 claim.  Rizzo v. Dawson, 778 F.2d 527, 532

21  (9th Cir. 1985); see also Valandingham v. Bojorquez, 866 F.2d 1135 (9th Cir. 1989); Pratt v.

22  Rowland, 65 F.3d 802, 807 (9th Cir. 1995).  "Within the prison context, a viable claim of First

23  Amendment retaliation entails five basic elements:  (1) An assertion that a state actor took some

24  adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that

25  such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did

26  not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-

27  68 (9th Cir. 2005).

28       Adverse action is action that "would chill a person of ordinary firmness" from engaging

1   in that activity.  Pinard v. Clatskanie School Dist., 467 F.3d 755, 770 (9th Cir. 2006); White v.

2   Lee, 227 F.3d 1214, 1228 (9th Cir. 2000); see also Lewis v. Jacks, 486 F.3d 1025, 1028 (8th Cir.

3   2007); see also Thomas v. Eby, 481 F.3d 434, 440 (6th Cir. 2007); Bennett v. Hendrix, 423 F.3d

4   1247, 1250-51 (11th Cir. 2005); Constantine v. Rectors & Visitors of George Mason Univ., 411

5   F.3d 474, 500 (4th Cir. 2005); Gill v. Pidlypchak, 389 F.3d 379, 381 (2d Cir. 2004); Rauser v.

6   Horn, 241 F.3d 330, 333 (3d Cir. 2001).  Both litigation in court and filing inmate grievances are

7   protected activities, and it is impermissible for prison officials to retaliate against inmates for

8   engaging in theses activities.  However, not every allegedly adverse action will be sufficient to

9   support a claim under section 1983 for retaliation.  In the prison context, cases in this Circuit

10  addressing First Amendment retaliation claims involve situations where the action taken by the

11  defendant was clearly adverse to the plaintiff.  Rhodes v. Robinson, 408 F.3d 559, 568 (9th Cir.

12  2005) (arbitrary confiscation and destruction of property, initiation of a prison transfer, and

13  assault in retaliation for filing grievances); Austin v. Terhune, 367 F.3d 1167, 1171 (9th Cir.

14  2004) (retaliatory placement in administrative segregation for filing grievances); Bruce v. Ylst,

15  351 F.3d 1283, 1288 (9th Cir. 2003) (retaliatory validation as a gang member for filing

16  grievances); Hines v. Gomez, 108 F.3d 265, 267(9th Cir. 1997) (retaliatory issuance of false

17  rules violation and subsequent finding of guilt); Pratt v. Rowland, 65 F.3d 802, 806 (9th Cir.

18  1995) (retaliatory prison transfer and double-cell status in retaliation); Valandingham v.

19  Bojorquez, 866 F.2d 1135, 1138 (9th Cir. 1989) (inmate labeled him a snitch and approached by

20  other inmates and threatened with harm as a result); Rizzo v. Dawson, 778 F.2d 527, 530-32 (9th

21  Cir. 1985) (retaliatory reassignment out of vocational class and transfer to a different prison).

22         Plaintiff states a cognizable unconstitutional retaliation claim against C/O Emard for

23  presenting at Plaintiff's cell, warning Plaintiff about filing 602 appeals (a protected activitiy),

24  saying he could be transferred to any housing block to get Plaintiff (likely to chill a person of

25  ordinary firmness), and spraying Plaintiff for no reason (which was clearly adverse to Plaintiff).

26

27

28         **8.  *Supervisorial Liability***

1       Plaintiff names supervisorial defendants Sgt. Daniela Frazer, M.T.A. Roseann Beagle,

2  Lt.'s Hartgrove, B. Taylor, and R. Miller,  Capt's F.B. Haws and R. Grounds (and mentions

3  Warden Sullivan in his statement of facts).

4       Supervisory personnel are generally not liable under section 1983 for the actions of their

5  employees under a theory of <u>respondeat</u> <u>superior</u> and, therefore, when a named defendant holds a

6  supervisorial position, the causal link between him and the claimed constitutional violation must

7  be specifically alleged.  <u>See</u> <u>Fayle v. Stapley</u>, 607 F.2d 858, 862 (9th Cir. 1979); <u>Mosher v.</u>

8  <u>Saalfeld</u>, 589 F.2d 438, 441 (9th Cir. 1978), <u>cert.</u> <u>denied</u>, 442 U.S. 941 (1979).  To state a claim

9  for relief under section 1983 based on a theory of supervisory liability, plaintiff must allege some

10  facts that would support a claim that supervisory defendants either: personally participated in the

11  alleged deprivation of constitutional rights; knew of the violations and failed to act to prevent

12  them; or promulgated or "implemented a policy so deficient that the policy 'itself is a repudiation

13  of constitutional rights' and is 'the moving force of the constitutional violation.'" <u>Hansen v.</u>

14  <u>Black</u>, 885 F.2d 642, 646 (9th Cir. 1989) (internal citations omitted); <u>Taylor v. List</u>, 880 F.2d

15  1040, 1045 (9th Cir. 1989).  Although federal pleading standards are broad, some facts must be

16  alleged to support claims under section 1983.  <u>See</u> <u>Leatherman v. Tarrant County Narcotics Unit</u>,

17  507 U.S. 163, 168 (1993).

18       Other than as identified herein above, Plaintiff has not alleged any facts indicating that

19  any of the named supervisorial defendants personally participated in the alleged deprivation of

20  constitutional rights or knew of the violations and failed to act to prevent them.

21       Plaintiff might be able to state a cognizable claim against Warden W.J. Sullivan

22  regarding his inaction to Plaintiff's correspondence "informing him of the reprisals" he was

23  suffering.  An inmate is entitled to an inference at the summary judgment stage (and therefore

24  also at the pleading stage) that prison administrators are liable for deliberate indifference when

25  they knowingly fail to respond to an inmate's requests (i.e. letters) for help.  See <u>Jett v. Penner</u>

26  439 F.3d 1091, 1098 (9th Cir. 2006) citing <u>Estelle v. Gamble</u>, 429 U.S. 97, 104 (1976); <u>Greeno v.</u>

27  <u>Daley</u>, 414 F.3d 645, 652-53 (7th Cir.2005); and <u>Moore v. Jackson</u>, 123 F.3d 1082, 1087 (8th Cir.

28  1997).  However, Plaintiff would need both to name Warden Sullivan as a defendant and specify

1   further detail(s) as to what issue(s) his correspondence addressed.

2   **II.   CONCLUSION**

3          For the reasons set forth above, Plaintiff's complaint is dismissed with leave to file an

4   amended complaint within thirty days.  If Plaintiff needs an extension of time to comply with this

5   order, Plaintiff shall file a motion seeking an extension of time no later than thirty days from the

6   date of service of this order.

7          Plaintiff must demonstrate in his complaint how the conditions complained of have

8   resulted in a deprivation of Plaintiff's constitutional rights.  See Ellis v. Cassidy, 625 F.2d 227

9   (9th Cir. 1980).  The complaint must allege in specific terms how each named defendant is

10  involved.  There can be no liability under section 1983 unless there is some affirmative link or

11  connection between a defendant's actions and the claimed deprivation.  Rizzo v. Goode, 423

12  U.S. 362 (1976); May v. Enomoto, 633 F.2d 164, 167 (9th Cir. 1980); Johnson v. Duffy, 588

13  F.2d 740, 743 (9th Cir. 1978).

14         Plaintiff is reminded that Fed.R.Civ.P. 18(a) provides that "'[a] party asserting a claim to

15  relief as an original claim, counterclaim, cross-claim, or third-party claim, may join, either as

16  independent or as alternate claims, as many claims, legal, equitable, or maritime, as the party has

17  against an opposing party.'  Thus, multiple claims against a single party are fine, but Claim A

18  against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated

19  claims against different defendants belong in different suits, not only to prevent the sort of

20  morass [a multiple claim, multiple defendant] suit produce[s], but also to ensure that prisoners

21  pay the required filing fees-for the Prison Litigation Reform Act limits to 3 the number of

22  frivolous suits or appeals that any prisoner may file without prepayment of the required fees. 28

23  U.S.C. § 1915(g)."  George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007).

24         Plaintiff is advised that it is inappropriate to attach exhibits to a complaint.  See Rule 8,

25  Federal Rules of Civil Procedure.  Further, the Court cannot serve as a repository for the parties'

26  evidence.  Originals or copies of evidence (i.e., prison or medical records, witness affidavits, etc.)

27  should not be submitted until the course of litigation brings the evidence into question (for

28  example, on a motion for summary judgment, at trial, or when requested by the court).  At this

point, the submission of evidence is premature as Plaintiff is only required to state a prima facie

claim for relief.  Thus, if amending his complaint, Plaintiff should simply state the facts upon

which he alleges a defendant has violated his constitutional rights and attach no exhibits.

Finally, Plaintiff is advised that Local Rule 15-220 requires that an amended complaint be

complete in itself without reference to any prior pleading.  As a  general rule, an amended

complaint supersedes the original complaint.  See Loux v. Rhay, 375 F.2d 55, 57 (9th Cir. 1967).

Once Plaintiff files an amended complaint, the original pleading no longer serves any function in

the case.  Therefore, in an amended complaint, as in an original complaint, each claim and the

involvement of each defendant must be sufficiently alleged.  The Court strongly recommends

that Plaintiff organize a second amended complaint, if he chooses to file one, in a fashion where

he states what constitutional rights he alleges were violated, by which specific defendants, that is

immediately followed by the factual basis for his allegation(s).

Based on the foregoing, it is HEREBY ORDERED that:

1.      Plaintiff's complaint is dismissed, with leave to amend;

2.      The Clerk's Office shall send Plaintiff a civil rights complaint form;

3.      Within **thirty (30) days** from the date of service of this order, Plaintiff must

         either:

         a.      File an amended complaint curing the deficiencies identified by the Court

                 in this order, or

         b.      Notify the Court in writing that he does not wish to file an amended

                 complaint and wishes to proceed only on the claims identified by the Court

                 as viable/cognizable in this order; and

4.      If Plaintiff fails to comply with this order, this action will be dismissed for failure

         to obey a court order and for failure to state a claim.

IT IS SO ORDERED.

**Dated:    August 26, 2008               /s/ Sandra M. Snyder**
                                       UNITED STATES MAGISTRATE JUDGE