# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RAY MEDINA, | 1:06-cv-00697-LJO-SMS-PC |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS, RECOMMENDING THAT DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO EXHAUST BE GRANTED |
| v. | |
| L. EMARD, et al., | (Doc. 52.) |
| Defendants. | OBJECTIONS, IF ANY, DUE IN THIRTY DAYS |

**I.    BACKGROUND**

Plaintiff Ray Medina ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983.  Plaintiff filed this action on June 5, 2006.  (Doc. 1.)  This action now proceeds on Plaintiff's original complaint against defendants Emard, Barajas, Bray, Nunley, Razo, and Morales for use of excessive physical force when they attacked Plaintiff, against defendant Frazer for standing by and watching the attack, against defendant Beagle for inadequate medical care after the attack, and against defendant Emard for retaliation against Plaintiff.[1]  On June 5, 2009, defendants Emard, Barajas, Bray, Nunley, Razo, Morales, Frazer and Beagle  ("Defendants") filed a motion to dismiss the complaint for Plaintiff's failure to exhaust administrative remedies before filing suit.  (Doc. 52.)

---

[1] The Court dismissed all other claims and defendants from this action on December 19, 2008.  (Doc. 40.)

1

On November 9, 2009, Plaintiff filed an opposition to the motion.[2]  (Doc. 61.)  On December 1, 2009, Defendants filed a reply to Plaintiff's opposition.  (Doc. 65.)  On December 9, 2009, Plaintiff filed a surreply which was stricken by the Court as improper on December 15, 2009.  (Docs. 66, 67.)  Defendants' motion to dismiss is now before the Court.

## II.     STATUTORY EXHAUSTION REQUIREMENT

Pursuant to the Prison Litigation Reform Act of 1995 ("PLRA"), "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  Prisoners must complete the prison's administrative process, regardless of the relief sought by the prisoner and regardless of the relief offered by the process, as long as the administrative process can provide some sort of relief on the complaint stated.  Booth v. Churner, 532 U.S. 731, 741 (2001).  "Proper exhaustion[, which] demands compliance with an agency's deadlines and other critical procedural rules . . . ." is required, Woodford v. Ngo, 548 U.S. 81, 90 (2006), and may not be satisfied "by filing an untimely or otherwise procedurally defective . . . appeal."  Id. at 83-84.

The PLRA requires a prisoner to exhaust "such administrative remedies as are available" before suing over prison conditions.  42 U.S.C. §1997e(a).  The Booth court held that the PLRA requires administrative exhaustion even where the grievance process does not permit award of money damages and prisoner seeks only money damages, as long as the grievance tribunal has authority to take some responsive action.  Booth, 532 U.S. at 732.  "The meaning of the phrase 'administrative remedies ... available' is the crux of the case."  Id. at 731.  In discussing the meaning of the term "remedy," the court noted that "depending on where one looks, 'remedy' can mean either specific relief obtainable at the end of a process of seeking redress, or *the process itself*, the procedural avenue leading to some relief."  Id. at 738. (emphasis added.)  Thus, the court determined that the language of the statute, which requires that the "available" "remed[y]" must be "exhausted" before a complaint under § 1983 may be entertained, refers to

---

[2] Plaintiff was provided with notice of the requirements for opposing an unenumerated Rule 12(b) motion on March 31, 2009.  Wyatt v. Terhune, 315 F.3d 1108, 1120 n.1 (9th Cir. 2003).  (Doc. 46.)

1  "exhaustion" of the *process available*. Id. at 738-739. (emphasis added.)   It follows, then, that if
2  an inmate exhausts the process that is made available to him, he has satisfied the requirement of
3  the statute.
4        Section 1997e(a) does not impose a pleading requirement, but rather, is an affirmative
5  defense under which defendants have the burden of raising and proving the absence of
6  exhaustion.  42 U.S.C. § 1997e(a); Jones v. Bock, 549 U.S. 199, 215-16 (2007); Wyatt v.
7  Terhune, 315 F.3d 1108, 1119 (9th Cir. 2003).  The failure to exhaust nonjudicial administrative
8  remedies that are not jurisdictional is subject to an unenumerated Rule 12(b) motion, rather than
9  a summary judgment motion.  Wyatt, 315 F.3d at 1119 (citing Ritza v. Int'l Longshoremen's &
10 Warehousemen's Union, 837 F.2d 365, 368 (9th Cir. 1998) (per curium)).  In deciding a motion
11 to dismiss for failure to exhaust administrative remedies, the Court may look beyond the
12 pleadings and decide disputed issues of fact.  Wyatt, 315 F.3d at 1119-20.  If the Court
13 concludes that the prisoner has failed to exhaust administrative remedies, the proper remedy is
14 dismissal without prejudice.  Id.

15 **III.     MOTION TO DISMISS FOR FAILURE TO EXHAUST**

16       The Court takes judicial notice of the fact that the California Department of Corrections
17 and Rehabilitation ("CDCR") has an administrative grievance system for prisoner complaints.
18 Cal.Code Regs., tit. 15 § 3084.1 (2007).  The process is initiated by submitting a CDC Form 602.
19 Id. at § 3084.2(a).  Appeals must be submitted within fifteen working days of the event being
20 appealed, and the process is initiated by submission of the appeal to the informal level, or in
21 some circumstances, the first formal level.  Id. at §§ 3084.5, 3084.6(c).  Four levels of appeal are
22 involved, including the informal level, first formal level, second formal level, and third formal
23 level, also known as the "Director's Level."  Id. at § 3084.5.  In order to satisfy § 1997e(a),
24 California state prisoners are required to use this process to exhaust their claims prior to filing
25 suit.  Woodford, 548 U.S. at 85; McKinney v. Carey, 311 F.3d, 1198, 1199-1201 (9th Cir. 2002).
26      ***Defendants' Motion***
27       Defendants bring a motion to dismiss the complaint pursuant to Rule 12(b), for Plaintiff's
28 failure to exhaust administrative remedies before filing suit.  Defendants submit evidence that

between July 22, 2005, the date Plaintiff arrived at the California Correctional Institution ("CCI) in Tehachapi,[3] and June 5, 2006, the date Plaintiff filed the complaint in this action, Plaintiff filed nine administrative grievances that were accepted for review by CCI's appeals staff.  (MTD at 4:18-20; Sampson Decl. ¶5.)  However, Defendants maintain that none of those grievances include the claims brought by Plaintiff against Defendants in his complaint.  (Memorandum of Points and Authorities ("P&A"), Doc. 52-2 at 4:18-22.)  Defendants also maintain that the Inmate Appeals Branch ("IAB"), which reviews and issues decisions for appeal at the final level of review, did not accept any of Plaintiff's appeals for a Director's Level decision between July 22, 2005 and June 5, 2006.  (P&A at 4:22-24; Grannis Decl. ¶4.)

*Plaintiff's Opposition*

In his verified opposition, Plaintiff does not dispute Defendants' evidence that he filed numerous appeals which were not submitted to all levels of the appeals process.  Instead, Plaintiff argues that all of the valid grievances he diligently filed were either denied or unprocessed by the Appeals Office, and therefore his remedies should be deemed exhausted.   As evidence, Plaintiff discusses and provides copies of four 602 prison appeals which addressed claims he brought in his complaint.

In the first appeal, dated August 18, 2005, Plaintiff complained of medical neglect by Dr. Vo for the injuries he received on August 16, 2005.  (Opp'n at 2, Ex 2 doc.1.)

In the second appeal, dated August 19, 2005, Plaintiff grieved the excessive force incident, lack of medical care, and verbal threats of retaliation, and requested an investigation to be conducted on "all involved C/Os."  (Opp'n at 3, Ex.3 doc.3.)  Plaintiff claims that during this time, all of the C/Os refused to provide him with 602 forms or writing materials.  (Opp'n at 3:27.)  He also claims he mailed a handwritten copy of this appeal to the Appeals Department and gave a copy to the MTA who took it for processing.  (Opp'n at 3:20-25.)

In the third appeal, dated August 31, 2005, Plaintiff mailed a follow-up "emergency" appeal grieving a lack of medical attention, made reference to his 602 appeal against Dr. Vo,

---

[3] At the time of the events at issue, Plaintiff was a prisoner in custody of the California Department of Corrections and Rehabilitation ("CDCR") at CCI.

4

complained of an ear infection, and requested an appointment with the eye doctor for failing vision. (Opp'n at 4, Ex. 4 doc. 1.)

In the fourth appeal, dated September 22, 2005, Plaintiff claimed he suffered from reprisals. (Opp'n at 5:1-5.) He recited an incident occurring on September 19, 2005, in which C/O Emard told Plaintiff he had been warned not to make problems about "what happened to you on 8-16-05" and sprayed Plaintiff with a can of mace. (Opp'n at 5, Ex. 6 doc. 1.) In this appeal, Plaintiff requested to be moved, or for C/O Emard to be stopped from working in Plaintiff's unit, and requested that his appeals be processed. Id. Plaintiff contends that "[F]ollow-up constituted exhaustion." (Opp'n at 5:5.)

### *Defendants' Reply*

Defendants reply that Plaintiff did not present any evidence supporting his contention that staff ignored his grievances, and the appeals Plaintiff claims he submitted lack a date stamp showing that the CCI Appeals Office even received the appeals. (Reply at 2:20-22.) Defendants also contend that Plaintiff contradicted his own evidence when he failed to mention in his opposition that his appeal regarding the August 16 event was rejected as untimely, and instead adopted a new story. (Reply at 23:3-8, 21-23.)

### *Plaintiff's Allegations in the Complaint*

Plaintiff's claims in this action arise from events which occurred while Plaintiff was incarcerated at CCI. In the complaint, Plaintiff alleges as follows:

Plaintiff has extremely long hair which he refused to cut upon transfer to CCI. On August 16, 2005, at CCI, after picking up his dinner tray, while on his way back to his cell, he picked up a bar of soap that another inmate tossed out to him. When Plaintiff picked up the soap, C/O Emard directed him to put down his dinner tray, and Plaintiff did not comply. C/O's Emard and Barajas approached Plaintiff, and C/O Emard grabbed Plaintiff's ponytail, slammed him into the wall and placed handcuffs on him. Plaintiff was moved downstairs and into a holding cell where he remained handcuffed. When Plaintiff yelled to Sgt. Frazer, C/O Emard walked over and sprayed mace into Plaintiff's face and ear. C/O Bray placed shackles on Plaintiff's ankles and two C/O's escorted Plaintiff from the holding cell. Due to the pace at which they were walking,

Plaintiff tripped, and the C/O's let go of his arms such that he fell face down, hitting his knees. C/O Bray then yelled that Plaintiff was resisting, at which time pepper spray was sprayed in Plaintiff's right eye and ear. As Plaintiff lay on the floor handcuffed, shackled, and coughing/gasping for breath, C/O's Bray, Nunley, Emard, Razo, Morales, and Barajas kicked his crotch and legs. C/O Razo drug Plaintiff by the shackles while the other C/Os continued to kick him.

Two C/Os then picked Plaintiff up by the handcuffs and shackles and carried him to be hosed off and placed in a holding cage where he was told to take off his clothes. He was given clean boxers to wear and after remaining in the holding cage for 2 ½ hours, C/O's Razo and Morales read Plaintiff his Miranda rights and advised that he was being charged with battery on C/O Nunley. Plaintiff requested medical attention, and C/O Razo advised he would have to wait until he was transferred to Ad-Seg. A while later, two C/O's cuffed Plaintiff and escorted him into a room where only his upper body was photographed by C/O's Mathus and Madden (not named defendants). Plaintiff was advised his lower body would be photographed after he was seen by a doctor. He was then placed in an isolation holding room instead of Ad-Seg so as to hide Plaintiff's bloodied wounds from the view of other inmates. Plaintiff was placed on suicide watch without a blanket, mattress, running water, or clean boxers.

The morning after the incident, Plaintiff again requested and was denied medical attention. Plaintiff was able to gain the attention of a nurse who advised that she could not assist him because he hit an officer, and his medical file could not be located for her to give Plaintiff his inhaler. On August 18, 2005, Plaintiff was transferred to Ad-Seg where C/O B. Taylor and all defendants conspired to coverup/justify Plaintiff's injuries. Capt. F. B. Haws submitted a false complaint to the district attorney charging Plaintiff with battery on a peace officer. On August 16, 2005, MTA Beagle generated a false medical report and denied Plaintiff medical care. On August 18, 2005, Plaintiff was seen by Dr. Vo who was advised that Plaintiff had assaulted a staff member and thereafter indicated that he did not want to get involved, only treating Plaintiff's infected eye. On September 22, 2005, Plaintiff wrote Warden W.J. Sullivan (not a named defendant) a letter "informing him of the reprisals" he was suffering. C/O M. Rogers (not a

named defendant) was assigned as the investigating officer and advised that he was working in the gym on the day of the incident and that the defendants really messed Plaintiff up.

On September 19, 2005, C/O Emard came to Plaintiff's cell, warned Plaintiff about his 602 appeals, said he could be transferred to any housing block, and sprayed Plaintiff for no reason. On September 25, 2005 and February 25, 2006, Lt.'s Miller and Hartgrove, respectively, denied Plaintiff due process regarding the rule violation (battery on an officer). Since the incident, Plaintiff has "not received proper medical treatment" and his appeals have not been acknowledged. Plaintiff was referred to an eye specialist via a waiting list and was told it would take four to six months to be seen. In the meantime, Plaintiff has developed migraine headaches and partially lost vision in his right eye and hearing in his right ear.

### *Discussion*

It is undisputed by the parties that Plaintiff submitted numerous appeals during the appropriate time period, but that no appeal addressing the claims Plaintiff brought in the complaint was accepted for review by the CCI Appeals Office or the IAB. The Court finds Plaintiff's argument unavailing, that he submitted valid appeals but the prison maliciously refused to process them, to prevent him from exhausting his remedies. Although Plaintiff's evidence shows he prepared at least four appeals addressing claims brought in the complaint, there is no evidence that Plaintiff submitted the appeals for review. None of the four appeals was assigned an Inmate Grievance Number, none was stamped with a "received" date, and none included a response by an official. Although Plaintiff alleges that prison officials maliciously refused to process the appeals, he does not support his allegations with facts demonstrating that anyone acted in such a manner. The Court also reviewed Plaintiff's complaint but found no evidence of exhaustion.[4] Plaintiff provides no evidence that he followed the required process pursuant to § 3084.1 et seq. to satisfy § 1997e(a). Therefore, Defendants are entitled to dismissal of this action in its entirety.

---

[4] In deciding a motion to dismiss for failure to exhaust administrative remedies, the Court may look beyond the pleadings and decide disputed issues of fact. Wyatt, 315 F.3d at 1119-20. Plaintiff signed the complaint under penalty of perjury. Therefore, Plaintiff's opposition to the motion to dismiss is based in part on the evidence in his verified complaint and its accompanying exhibits.

### IV. CONCLUSION AND RECOMMENDATION

Defendants have met their burden of demonstrating that Plaintiff failed to exhaust his remedies prior to filing suit, in compliance with § 1997e(a). Defendants show an absence in the official records of any evidence that Plaintiff filed an inmate appeal pursuant to Title 15 of the California Code of Regulations § 3084.1, et seq., concerning Plaintiff's allegations of excessive force, deliberate indifference, inadequate medical care, or retaliation before the complaint was filed. Plaintiff has not submitted evidence of any appeals that satisfy the exhaustion requirement. Therefore, the Court HEREBY RECOMMENDS that Defendants' motion to dismiss, filed June 5, 2009, be GRANTED, and this action be dismissed in its entirety, without prejudice, based on Plaintiff's failure to exhaust.

These Findings and Recommendations will be submitted to the United States District Court Judge assigned to this action pursuant to the provisions of 28 U.S.C. § 636 (b)(1). Within thirty (30) days after being served with a copy of these Findings and Recommendation, any party may file written objections with the Court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." The parties are advised that failure to file objections within the specified time may waive the right to appeal the order of the District Court. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:     December 15, 2009**                    /s/ Sandra M. Snyder
                                              UNITED STATES MAGISTRATE JUDGE